RAYMOND A. SHANLEY ET AL. *v.* STEPHEN JANKURA ET AL.

WYNNE, C. J., BALDWIN, DALY, KING and MURPHY, Js.

Argued November 5—decided December 17, 1957

*Daniel E. Brennan, Jr.,* with whom, on the brief, were *James J. A. Daly* and *Thomas F. Seymour,* for the appellants (plaintiffs).

*John V. Donnelly,* for the appellees (defendants).

BALDWIN, J.   This action was brought by two lieutenants in the police department of the city of Bridgeport against the civil service commission of the city, the personnel director and the board of police commissioners.   The plaintiffs sought a declaratory judgment securing their right to be appointed police captains and to be assigned, respectively, to the duties of police departmental clerk and training and court liaison officer under the Civil

Service Act. They also sought permanent injunctions to restrain the defendants from canceling an employment list for the position of police captain upon which their names were posted. The trial court ordered judgment entered for the defendants, and the plaintiffs have appealed.

The finding is not subject to correction in the two particulars claimed by the plaintiffs. The pertinent facts may be stated as follows: The charter of the city of Bridgeport empowers the common council to make, alter and repeal ordinances, among other matters, "relative to the city police"; Bridgeport Charter, § 56 (1939); 17 Spec. Laws 842; to increase or reduce the membership of the police department, and to create new offices therein. Bridgeport Charter, § 234 (1939); 15 Spec. Laws 529, § 91.[1] The council may abolish, among other offices, those of superintendent, captain, lieutenant and sergeants in the police department, on the occurrence of a vacancy. Ibid. If the council votes to reduce the police force, the board of police commissioners, hereinafter referred to as the board, is to "remove a sufficient number of the members to conform to such vote." Ibid. The charter also provides that

[1] "[Spec. Acts 1907, No. 461] Sec. 91. Nothing contained in the foregoing sections shall be so construed as to prevent the common council from increasing or reducing the membership of the police or fire department or creating new offices in the same; but the common council may abolish the offices of superintendent, captain, lieutenant, and sergeants, in the police department, and of chief engineer, assistant engineers, and superintendent of the fire alarm and superintendent of machinery, in the fire department, and may increase or diminish the salaries of such officers, only in case of a vacancy in any such office to be so [a]ffected, or by an ordinance to take effect upon the occurrence of any such vacancy; and in case the common council shall vote to reduce the police or fire force of the city, said respective boards shall remove a sufficient number of the members to conform to such vote."

it is the duty of the board to appoint "fit and suitable persons" to offices in the police department and to remove them for just and sufficient cause. Bridgeport Charter, § 230 (1939); 15 Spec. Laws 872, § 4. Pursuant to its powers, the council by ordinance conferred upon the board the general management and control of the police department and the authority to make all needful rules and regulations for its government. Bridgeport Ordinances, § 232 (1939). The council also specified by ordinance that the police department "shall be composed of a superintendent of police, an assistant superintendent of police, a police matron and not more than seven police captains, eighteen police lieutenants, fifty-three police sergeants, and two hundred thirty-three patrolmen." Id., § 236. The plaintiffs concede that the latter ordinance was adopted prior to 1920.

In 1935, the General Assembly enacted a civil service law for the city. Bridgeport Charter, c. 16 (1939); 22 Spec. Laws 261. This act provides, among other things, for the appointment of a civil service commission, hereinafter referred to as the commission, which is to appoint a personnel director and adopt and amend rules and regulations for the administration of the act. It specifically states that "[n]o provision of the general statutes or special acts inconsistent with any provision of this act shall apply to the city of Bridgeport." Bridgeport Charter, § 227 (1939); 22 Spec. Laws 271, § 25. A classified and an unclassified service were established pursuant to the act. Positions in the classified service were allocated to classes established in a classification plan, and all those holding those positions as of October 3, 1935, were given tenure. All positions and offices in the police department were placed in the classified service.

On June 5, 1953, the personnel director held a competitive test to establish an employment list for the class of police captain. At this time, the classes of positions established by the classification plan for the police department were superintendent, captain, lieutenant, sergeant, patrolman and detective. The personnel director, as the result of the test, posted on August 24, 1953, an employment list of persons eligible for appointment as police captain in the order of their relative merit. Thomas J. Cafferty placed first, the plaintiff Raymond A. Shanley, second, and the plaintiff Francis J. Shanley, third. The list had a duration of two years from August 24, 1953. On October 12, 1954, the commission instructed the personnel director to make a study and submit a report on positions in the classified service, with a view to a new allocation of positions. At a meeting of the commission on July 19, 1955, the personnel director reported, among other matters, that the positions of clerk of the police department and training and court liaison officer should be allocated to the class of police captain. At this meeting, the commission, in response to a request from the board for the certification of an eligible person to the position of relief captain in the police department, certified Cafferty, and he was appointed. This increased the number of police captains from seven to eight, in violation of the ordinance establishing the membership of the department. Bridgeport Ordinances, § 236. Following Cafferty's appointment, the plaintiff Raymond A. Shanley stood first on the employment list for positions in the class of captain, and Francis J. Shanley, second.

In the original allocation of positions in the police department following the adoption of the Civil Service Act in 1935, the position of clerk of the

department had been allocated to the class of police captain, the office then being occupied by John A. Lyddy, who held that rank. On September 21, 1943, Lyddy was appointed police superintendent. The position of clerk thereby becoming vacant, the board appointed Sergeant James E. Falvey to it. Falvey then was, and still is, ineligible to hold any position within the class of captain. The commission was not asked by the board for, nor did it give, its approval of the appointment of Falvey. The position of training and court liaison officer was occupied by the plaintiff Francis J. Shanley, and although it was in the classified service, it had not been allocated by the commission to any class of position. The ordinance (§ 236) relating to the membership of the police department had been consistently violated, after the adoption of the Civil Service Act in 1935, by the employment of more officers and patrolmen than was authorized.

At the meeting of the commission on July 19, 1955, the report of the personnel director concerning the allocation of positions was tabled and a subcommittee was appointed to confer with the board. On August 9, 1955, the subcommittee obtained from the city attorney an opinion that the common council had the power by ordinance to set a maximum limit upon the number who could be appointed to the various positions in the police department and that the allocation of positions must accord with that limit. At a meeting on that day, the commission voted to allocate the position of clerk of the department to the class of sergeant and the position of training and court liaison officer to the class of lieutenant. The plaintiffs appealed from this action to the commission and also instituted the present suit. On September 13, 1955, the commission canceled,

except as to the plaintiff Raymond A. Shanley, the employment list for the position of police captain. On September 6, 1955, pending the decision of this case, the common council had amended § 236 of the ordinances, increasing the number of police captains to eight.

The plaintiff Raymond A. Shanley claims that a mandatory injunction should issue directing the commission to certify, and the board to appoint, him to the clerk's position, now occupied by Sergeant Falvey, in the class of police captain. The plaintiff Francis J. Shanley claims a mandatory injunction directing that he be certified and appointed to the position of training officer, which he now occupies as a police lieutenant, in the class of police captain. The gist of the plaintiff Raymond's argument is this: The commission had allocated the position of clerk in the police department to the class of captain. This position is vacant because the present incumbent is occupying it illegally. It is the only vacancy in the department open for an appointment in the class of captain. Therefore, he is entitled to promotion to the class of captain and appointment to the position automatically. This argument presupposes that the commission can allocate a position in the police department to the class of captain and thereby require the board to fill the position with an appointee of that class even though by so doing the board would exceed by one the number of police captains fixed by ordinance. The claim is that, so far as fixing the number and class of positions in the police department is concerned, the Civil Service Act adopted in 1935 repealed the charter provisions which gave the common council power to adopt ordinances "relative to the city police" and to increase or reduce the membership of the police force and,

with them, the ordinance, adopted pursuant to such power, establishing the number of police captains at seven. Bridgeport Charter, c. 16 (1939); id., §§ 56, 234; 22 Spec. Laws 261; 17 id. 842; 15 id. 529, § 91; Bridgeport Ordinances, § 236. The resolution of this issue decides the case.

There is nothing in the Civil Service Act which in terms confers upon the commission authority to fix the number of positions in the police department. The act does state that "[n]o provision of the general statutes or special acts inconsistent with any provision of this act shall apply to the city of Bridgeport." Bridgeport Charter, § 227 (1939); 22 Spec. Laws 271, § 25. This means no more than that the general rules relating to repeal by implication shall apply. *Woodmont Assn.* v. *Milford,* 85 Conn. 517, 520, 84 A. 307. The plaintiffs assert that the charter provisions and the ordinances adopted pursuant thereto are inconsistent with the Civil Service Act and therefore are repealed by implication. "A statute is impliedly repealed by a later statute only if the latter is necessarily repugnant to the former." *Landry* v. *Personnel Appeal Board,* 138 Conn. 445, 451, 86 A.2d 70, and cases cited. They are "repugnant only when both cannot reasonably be given effect." *State* v. *Giant's Neck Land & Improvement Co.,* 116 Conn. 119, 122, 163 A. 651. If courts can by any fair interpretation find a reasonable field of operation for both statutes without destroying or perverting their evident meaning and intent, it is the duty of the courts to do so, thus reconciling them and according to them concurrent effect. *Leete* v. *Griswold Post,* 114 Conn. 400, 405, 158 A. 919; *Costa* v. *Reed,* 113 Conn. 377, 385, 155 A. 417, and cases cited; 1 Sutherland, Statutory Construction (3d Ed.) § 2014.

The obvious legislative intent of the charter provisions is to confer upon the common council broad powers to create and maintain a police department. Similar provisions may be found in most, if not all, city charters. The charter also authorizes the appointment of a board of police commissioners. Bridgeport Charter, § 45 (1939); 18 Spec. Laws 1031. To this board was entrusted, among other things, the power to appoint "fit and suitable persons" to fill the offices in the department. Bridgeport Charter, § 230 (1939); 15 Spec. Laws 872, § 4. On the other hand, the Civil Service Act gave the commission authority to adopt classification and compensation plans for city employees, and all positions in the police department were placed in the classified service. Bridgeport Charter, §§ 206, 205 (1939); 22 Spec. Laws 262, §§ 4, 3. Appointments to classified positions must be made by the "appointing authority"—in this case the board of police commissioners—from an appropriate re-employment or employment list established by the commission for the class of position to be filled. Bridgeport Charter, § 213 (1939); 22 Spec. Laws 266, § 11.

The common council of Bridgeport is the governing body of the city. It can exercise all the powers of the municipality except those expressly granted to other agencies. *State ex rel. Stamford* v. *Board of Purchase & Supplies*, 111 Conn. 147, 157, 149 A. 410; *New Haven Taxpayers Research Council, Inc.* v. *DePalma*, 137 Conn. 331, 336, 77 A.2d 338. There is no express authority given to the commission to fix the number of officers in the city police. If such a power were to be accorded to it by implication from the language creating and empowering it to act, the result would be confusion. The commission could then control the entire op-

eration of the police department by prescribing the extent of its service, its internal organization and its budgetary needs. If this were true of the police, it could be true of all the other departments and eventually the commission, a purely administrative agency, would take over a large part of the functions of government for the city. The only authority given by the Civil Service Act to the commission which impinges upon the power of the common council and the board of police commissioners is the requirement that the board make appointments to the city police from lists of examined and qualified personnel certified by the commission. This requirement meets the commonly accepted purpose and function of civil service. *State ex rel. McNamara* v. *Civil Service Commission,* 128 Conn. 585, 588, 24 A.2d 846; 10 Am. Jur. 921, § 2. The provisions of the charter and the Civil Service Act as they bear upon the issues of this case, instead of being repugnant, fit together into a harmonious body of legislation, as the legislature presumably intended that they should. *State* v. *Jordan,* 142 Conn. 375, 378, 114 A.2d 694; *Wilson* v. *West Haven,* 142 Conn. 646, 654, 116 A.2d 420.

The common council having fixed by ordinance the number of police captains in the department at seven, the commission could not, by allocating the position of clerk to the class of police captain, lawfully increase the number to eight. The board was powerless to promote the plaintiff Raymond A. Shanley to the position of captain and to assign him to the position of clerk of the department even if Falvey, the incumbent, was holding the position unlawfully. Nor can the board's appointment of Cafferty as relief captain in violation of the ordinance help these plaintiffs. One violation cannot

justify a second and a third. The limit fixed by the ordinance likewise precludes the promotion of the plaintiff Francis J. Shanley to captain. The later action of the common council increasing the number of police captains to eight was within its power. The action of the commission in reallocating the position of clerk to the class of sergeant and the position of training and court liaison officer to the class of lieutenant was within its power. Neither action can be labeled arbitrary or unreasonable, because both manifested the purpose of complying with the law as it was stated, and correctly, in the opinion of the city attorney. The plaintiffs are the unfortunate victims of what appears to have been a genuine misunderstanding concerning the limits of authority of the common council, the board of police commissioners and the commission—a misunderstanding which, from a study of the record in this case, appears to have plagued all concerned for a considerable period.

Two other matters deserve brief mention. The employment list upon which the plaintiffs' names appeared expired by operation of law on August 23, 1955, and the action of the commission canceling it was proper. Bridgeport Charter, § 211 (1939); 22 Spec. Laws 265; *State ex rel. Chernesky* v. *Civil Service Commission,* 141 Conn. 465, 470, 106 A.2d 713. No extension could be granted. *Cassidy* v. *Tait,* 140 Conn. 156, 162, 98 A.2d 808. The rulings on evidence assigned as error were correct. Whether the board of fire commissioners had made appointments in violation of an ordinance limiting the number of specified positions in that department was immaterial, for the reasons hereinbefore stated.

There is no error.

In this opinion the other judges concurred.