[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an appeal pursuant to Conn. Gen. Stat. 22a-43 from a decision rendered by the Torrington Inland Wetlands Commission ("Commission") on February 28, 1990. The plaintiffs, Joseph L. Consolini, Elizabeth J. Consolini Robert A. Rizzo, Conio C. Lopardo, Marlene R. Lopardo, Robert A. Gioiella, Donna J. Gioiella, and Ronald Clifford, appeal a decision of the Commission rescinding a prior order requiring the co-defendant Torrington Commercial Associates ("TCA") to submit a new wetlands application. The new wetlands application is for the construction of a strip shopping center, which was downsized from a shopping mall application previously approved by the Commission.
On April 13, 1988, TCA applied to the Commission for a permit to conduct certain activities in a wetland, including the creation of two detention ponds. (Plaintiffs' complaint, paragraph 1). This permit application was submitted in connection with a development known as Litchfield Hills Mall. Id. On July 12, 1988, after notice and a public hearing, the Commission approved a wetland permit for TCA, subject to nine conditions. (Plaintiffs' complaint, paragraph 2). Specifically, the permit was for "the creation of two detention ponds as shown and located on the application plan Map PL-1 "Master Layout Plan November, 1987 prepared by F.A. Hesketh Associates, Inc.," and the "placement of fill for berms, installation of piping, rip rap, plunge pools and swales for storm drainage." (Plaintiffs' complaint, Exhibit 1). In addition, on January 24, 1989, a companion permit was approved by the Commission. (See Exhibit A to Memorandum in support of the Motion to Dismiss by TCA dated September 14, 1990). The second permit was for the construction of a driveway and the increase of wetlands within proposed detention basin No. 2.
On January 23, 1990, TCA submitted to the Commission a plan for the Lichfield Hills Plaza. (Plaintiffs' complaint, paragraph 4). "The CT Page 6183 purpose of this submission was to determine whether or not a new permit application would be required for the activity proposed in a portion of the same wetlands." Id. On January 23, 1990, the Commission voted, upon motion, that a new permit application would be required "because substantial changes were made to the original (approved) plan," Record Item 2). On February 27, 1990, the matter again appeared on the meeting agenda for the Commission and the Commission voted to revoke its prior decision to require a new permit application (Record, Item 4).
Thereafter, on March 19, 1990, the plaintiffs filed this appeal claiming, inter alia, that the Commission acted illegally, arbitrarily and in abuse of its discretion when it voted to rescind the prior order requiring TCA to submit a new wetland application. The plaintiffs complaint also makes a broadly based attack on other alleged abuses of the Commission's discretion in its decision to rescind their prior order.
Although raised in the complaint, issues which are not briefed are considered abandoned. State v. Ramsundar, 204 Conn. 416 (1987); DeMilo v. West Haven, 189 Conn. 671, 681-82 n. 8 (1983). The plaintiffs brief addresses three issues (1) bias, predisposition and ex parte communication, (2) allowing a developer to conduct a regulated activity in a wetland without a permit and without evidence of impact; and (3) violation of the Commission's own regulations.
On June 6, 1990, the Commissioner of the Department of Environmental Protection ("DEP") after being notified of this action pursuant to Conn. Gen. Stat. 22a-43, filed an appearance as a party defendant. On August 15, 1990, pursuant to its motion and Conn. Gen. Stat. 22a-43(b), TCA was made a party defendant.
AGGRIEVEMENT
Aggrievement on the part of the appellant is required to give the court subject matter jurisdiction over the administrative appeal. Walls v. PZC, 176 Conn. 475, 479 (1979). There are two types of aggrievement, statutory and classical. Mystic Marinelife Aquarium, Inc. v. Gill,175 Conn. 483 (1978). The question of aggrievement is one of fact to be determined by the trial court. Glendenning v. Conservation Commission,12 Conn. App. 47, 50 (1987), cert. denied, 205 Conn. 802 (1989). Aggrievement is established if there is a possibility, as distinguished form a certainty, that some legally protected interest has been adversely affected, Huck v. Inland Wetlands and Watercourses Agency, 203 Conn. 525,530 (1987). From the evidence presented at the hearing, the court finds plaintiff, Ronald B. Clifford, is a person owning land which abuts a portion of land involved in the Commission's decision and pursuant to Conn. Gen. Stat. 22a-43a is an aggrieved party entitled to bring this appeal. The other named plaintiffs did not testify at the hearing on this appeal.
The agency's decision must be sustained if an examination of the record CT Page 6184 discloses evidence that supports any one of the reasons given. Huck,203 Conn. at 539-540. The evidence supporting such reason must be substantial. Id. The credibility of the witnesses and the determination of factual issues are within the province of the agency. Id. The court must take into account that the record may contain contradictory evidence, but that the possibility of drawing inconsistent conclusions, does not prevent the agency's findings from being supported by the court, Id. at 540. As a general rule, the court's determination of the appeal is limited to the record before it. Leib v. Board of Examiners for Nursing, 177 Conn. 78, 92
(1979).
The plaintiffs first argue that the Commission, or one or more of its members, showed predisposition and bias in revoking its prior vote and that there is evidence of ex parte communications with the developer. The defendants, Commission and TCA, respond that there is absolutely no evidence in the record that establishes such prejudice or bias.
Hearings before administrative agencies, although informal and conducted without regard to the strict rules of evidence, "must be conducted so as not to violate the fundamental rules of natural justice," Huck,203 Conn. at 536. The application should be heard and determined by an impartial and unbiased agency. Id. While it is true that neutrality and impartiality of members of administrative boards and commissions are essential to the fair and proper operation of these bodies, an allegation of bias must be supported by some evidence proving probability of bias before an official can be faulted. Id. at 536-37. Because public officers, acting in their official capacities, are presumed, until the contrary appears, to have acted legally and properly, the burden on such a claim rests upon the person asserting it. Id. at 537.
The plaintiffs have failed to meet their burden of proof that the Commission's decision to reverse itself was due to bias, prejudice or the result of ex parte communications. As to the latter claim, the only evidence of such a communication is one that took place before the January meeting at which time there was nothing pending before the Commission.
 II.
The plaintiffs also claim that the action of the Commission was arbitrary and illegal in that it allows the developer to conduct a regulated activity in a wetland without a permit and without any evidence of impact.
The Minutes of the January 23, 1990, meeting of the Commission (Record Item 2) reflect the following:
 Commissioners discussed whether or not a new application for permit would be necessary. Attorney Maureen Donne (sic), representing the neighbors against the Mall, said that the CT Page 6185 original permit required the project to be downscaled and that they reapply to the Commission, MOTION by Mr. Perret that Litchfield Hills Plaza reapply to Inland Wetlands because substantial changes were made to the original (approved) plan.
Second by Mr. Royals.
 Vote: . . . By 4 to 2 vote in favor, motion for application to reapply, so moved.
The minutes of the February 27, 1990, meeting of the Commission (Record, Item 4) reflect the following:
 Mr. John Larson came forth explaining that the plan was downsized, they conformed to previous action of the Commission, and didn't feel it was necessary to come back before the Commission. There was concern about a diversion from East to the West branch of Lead Mine Brook, and also storm water discharge. He submitted letter dated February 27, 1990 from Konover addressing these concerns. This type of diversion is exempt by General Statute from being required to obtain a permit from the D.E.P. Mr. Larson asked for a reversal of the Commission's previous decision.
 Mr. Perret felt that it wasn't just a downsizing of the project, and was concerned that the old detention basin would be adequate with the new run off. Mr. Larson replied that the amount of volume is decreased, and the amount of fill is decreased — it is a benefit, not a detriment. There are no areas where they are increasing these factors.
 Mr. Hubert offered apology to applicant(s) for the confusion. Ms. Pacheco explained that applicant was told that their item would not be on the agenda at the previous meeting. Mr. Royals explained that at the January, 1990 meeting some of the Commissioners felt that the project changed enough (wanting to abide by the legality of approving permits "per plans") to invalidate the permit.
 Attorney Maureen Donne (sic), representing the neighbors came forth suggesting that a public hearing be held. More information is needed and the permit should be made inactive. After discussion, Mr. Hubert announced that the majority of the Commission felt that applicant does not need a new permit.
MOTION by Mr. Rubino to rescind vote.
SECOND by Ms. Pacheco, unanimously moved
 VOTE: . . .Mr. Hubert announced by 4 to 2 vote, MOTION so moved, and applicant does not require new permit. CT Page 6186
"Ordinarily, an administrative agency cannot reverse a prior decision unless there has been a change of conditions or other considerations have intervened which materially affect the merits of the matter decided." Grillo v. Zoning Board of Appeals, 206 Conn. 362, 367 (1988), citing Malmstrom v. Zoning Board of Appeals, 152 Conn. 385, 390-391 (1965).
The Commission at the February 27, 1990 meeting was presented with sufficient evidence to support a decision to reverse its previous order. (Record Item 3). Mr. Larson, a representative of TCA was not present at the January 23, 1990 meeting due to an apparent miscommunication. (Record Item 4). The evidence presented and the explanations offered by Larson, at the February 27, 1990 meeting, as well as the additional evidence offered at the hearing, support the Commission's decision to rescind its first vote and find that a new permit application was not necessary. (Record Items 3 4 and Defendant's Exhibit 1).
 III.
Lastly, the plaintiffs claim that the Commission violated its own regulations by its action of January 23 and February 27.
Connecticut General Statutes 22a-36 through 22a-45 provide for the regulation of inland wetlands and watercourses as areas. The legislation allows for municipal regulation of wetlands, and the local wetlands agency serves as the sole agent for the licensing of regulated activities. Huck,210 Conn. at 552. Towns are authorized to establish boundaries of inland wetland areas in their towns and to promulgate regulations to protect the town's wetlands. Marshall v. Kleinman, 186 Conn. 67, 71 (1982). Once established, no regulated activities shall be conducted within the boundaries without a permit issued by the local agency. Connecticut Fund for the Environment v. Stamford, 192 Conn. 247, 250 (1984). Once a municipality does create an inland wetlands commission, that commission becomes the "sole" regulatory authority over the wetlands within its territory. Pac v. Inland Wetlands and Watercourses Commission,35 Conn. Sup. 145, 149 (1978). "An agency empowered to implement the wetlands act must. . .be vested with a certain amount of discretion in order to carry out its function." Red Hill Coalition, Inc. v. Conservation Commission, 212 Conn. 710, 722 (1989).
The Commission's decision here not to require TCA to submit a new permit application was within the Commission's discretion in light of the fact that the Commission had previously approved two wetland permits for the same wetlands area.
DEP has submitted a brief and alleges that the Commission abused its discretion because the record does not provide any basis for the Commission to have reversed its prior decision requiring the submittal of a new application. This issue is addressed in section two of this memorandum. The Commission was presented with and the record reflects sufficient evidence to support the Commission's decision not to require TCA to submit CT Page 6187 a new wetland application.
The record supports the Commission's decision with regard to the three issues raised by the plaintiffs. Accordingly, the plaintiffs' appeal is dismissed.
SUSCO, J.